IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS M. CARPENTER, DANIEL KLETCHECK, and CHRISTOPHER M. WALKER, | CIVIL ACTION |
| *Plaintiffs, on behalf of themselves and all others similarly situated,* | NO. 20-3881 |
| v. | |
| PEPPERIDGE FARM, INCORPORATED, *Defendant.* | |
| | |
| PEPPERIDGE FARM, INCORPORATED, *Counterclaimant,* | |
| v. | |
| DOUGLAS M. CARPENTER, DANIEL KLETCHECK, and CHRISTOPHER M. WALKER, | |
| *Counterclaim Defendants.* | |
| | |
| PEPPERIDGE FARM, INCORPORATED, *Third-Party Plaintiff,* | |
| v. | |
| WAREHOUSE TRAINERS, INC., and CARPENTER CORE, INC., | |
| *Third-Party Defendants.* | |

PAPPERT, J.                                                    March 1, 2021

## <u>MEMORANDUM</u>

Douglas M. Carpenter, Daniel Kletcheck and Christopher Walker contend

Pepperidge Farm, Incorporated misclassified them and others similarly situated as independent contractors instead of as employees and they seek unpaid overtime and other damages.  They assert a collective action claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq., and class action claims pursuant to the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.1, et seq., and for unjust enrichment.

In response, Pepperidge Farm asserts an unjust enrichment counterclaim against Walker, Carpenter and Kletcheck and, only against Walker, an indemnification counterclaim.  Pepperidge Farm also filed third-party complaints against Carpenter Core, Inc. and Warehouse Trainers, Inc. asserting claims for indemnification and for unjust enrichment in the event the Court finds Plaintiffs are properly classified as independent contractors.

Carpenter, Kletcheck, and Walker move to dismiss Pepperidge Farm's counterclaims and Carpenter Core and Warehouse Trainers move to dismiss Pepperidge Farm's third-party complaints.  The Court grants the motions with respect to Pepperidge Farm's indemnification claims and denies the motions in all other respects.

I

A

Pepperidge Farm products are sold to various retail stores and the company relies on distributors to "deliver, stock, merchandise, promote, and remove" them "for stores in defined territories."  (Compl., ECF 1 at ¶¶ 9-10.)  To perform this work, Plaintiffs and similarly situated individuals entered into "substantially similar"

2

contracts with the company.  (*Id.* at ¶ 12.)  Carpenter Core, with Carpenter as its guarantor, entered into a Consignment Agreement with Pepperidge Farm (ECF 1 at 22 (Ex. A)), as did Warehouse Trainers, with Kletcheck as guarantor.  (*Id.* at 32 (Ex. B).) Walker directly entered into a Consignment Agreement with the company.  (*Id.* at 45 (Ex. C.).)  In the Consignment Agreements, Carpenter Core, Warehouse Trainers and Kletcheck agree they "are a self-employed independent contractor, not an agent or employee of [Pepperidge Farm]" with "no authority other than to distribute products consigned" under the agreement "and to solicit orders for and make deliveries of" Pepperidge Farm's products.  (*See, e.g.*, ECF 1 at 26 (Ex. A, ¶ 15).)  They may, at their "own expense and risk, employ such persons as [they] deem appropriate to assist in the performance of [their] obligations" under the Consignment Agreements and "shall be responsible for the hiring, firing, training, and supervision of, and all remuneration and benefits for, any person so employed."  (*Id.*)  The contracting parties agreed the "independent contractor relationship . . . is an essential element" of the Consignment Agreements.  (*Id.*)

Notwithstanding the language in the contracts, Plaintiffs claim Pepperidge Farm misclassified them as independent contractors.  (ECF 1 at ¶ 26.)  They allege that "[w]hile Distributors pay for the opportunity to enter into [Consignment] Agreements and to secure an assigned distribution territory, Pepperidge Farm's right to control, and extensive actual control, over Plaintiffs and [putative] Class/Collective Members is such that the Distributors are actually employees under Pennsylvania law."  (*Id.* at ¶ 12.)

Plaintiffs contend Pepperidge Farm has failed to pay them required overtime compensation and to indemnify them for employment related expenses, including the

cost of providing appropriate vehicles and vehicle expenses.  (ECF 1 at ¶¶ 29-30.)  In addition, they allege the company "has unlawfully collected and withheld earned wages," "has failed to itemize the total hours worked on wage statements" and "to maintain payroll records showing the actual hours worked . . . and/or to record the actual hours worked . . . ."  (*Id.* at ¶ 33.)

B

In its counterclaims against Carpenter and Kletcheck – for unjust enrichment – and Walker – for indemnification and unjust enrichment, Pepperidge Farm contends their independent contractor status allows them "the right to set their own schedules, hours worked, and sequence of performing work; to determine when breaks are taken" and to enjoy other "rights and benefits" which they would not have obtained "[i]f they had been employees of Pepperidge Farm . . . ."  (ECF 6 at ¶¶ 13-17.)  The company alleges the Counterclaim-Defendants "acknowledged and agreed to the arrangement outlined in the Consignment Agreements" "[b]y their actions, including, but not limited to, their retention of the revenue generated from their independent contractor businesses . . . ."  (*Id.* ¶ 18.)  It asserts that Walker's claims, which "relate to payroll and the payment of purported wages" "were caused directly by" his own actions, "namely, his filing the lawsuit and alleging that he is an employee of Pepperidge Farm notwithstanding his representations to the contrary in his Consignment Agreement." (ECF 6 at ¶¶ 22, 23.)  In the alternative, Pepperidge Farm contends Walker's claims arise from his operation of his distributorship as "he alleges that he did not operate his distributorship as an independent contractor . . . ."  (*Id.* ¶ 24.)  The company also alleges Walker's claims "are covered by the indemnification provision in his

4

Consignment Agreement . . . ." (*Id.* at ¶ 25; *see* ECF 1 at 48-49 (Compl. Ex. C at ¶ 13)).)

Similarly, in its third-party complaints against Carpenter Core and Warehouse Trainers, Pepperidge Farm alleges they enjoyed "rights and benefits: they would not have had if they, or any of their "owners/shareholders/officers/employees/helpers are employed by Pepperidge Farm (instead of an independent contractor) . . . ." (ECF 10 at ¶ 16 (Carpenter Core); ECF 11 at ¶ 16 (Warehouse Trainers).)  Pepperidge Farm alleges Carpenter Core's and Warehouse Trainers's claims are covered under the indemnification provisions in their Consignment Agreements and they are "required to protect, defend, indemnify, and hold harmless Pepperidge Farm" for "liabilities of every kind and nature" arising from their claims.  (ECF 10 at ¶ 21 (Carpenter Core); ECF 11 at ¶ 21 (Warehouse Trainers); *see also* (ECF 1 at 26 (Compl. Ex. A at ¶ 13); *id.* at 36 (Compl. Ex. B at ¶ 13).)  The company alleges "Carpenter Core was responsible for ensuring Carpenter was properly compensated in compliance with applicable laws" (ECF 10 at ¶ 20) and Warehouse trainers was likewise responsible for ensuring Kletcheck received proper compensation.  (ECF 11 at ¶ 20.)

## II

## A

Walker, Carpenter, Kletcheck, Warehouse Trainers and Carpenter Core argue Pepperidge Farm lacks standing to bring any of its claims because it has not alleged that it has suffered any damages.  (ECF 12 at 6-7; ECF 19 at 7.)  Federal Rule of Civil Procedure Rule 12(b)(1) governs motions to dismiss for lack of standing because "[s]tanding is a jurisdictional matter." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016); *see also Save Ardmore Coal. v. Lower Merion Twp.*, 419 F. Supp. 2d 663, 669

(E.D. Pa. 2005) ("A challenge to the ripeness of an action for adjudication is appropriately brought as a motion to dismiss for lack of subject matter jurisdiction.") (citation omitted).  Generally, Rule 12(b)(1) motions fall into two categories:  facial attacks and factual attacks.  *Davis*, 824 F.3d at 346.  A factual challenge "attacks the factual allegations underlying the complaint's assertion of jurisdiction, either through the filing of an answer or 'otherwise present[ing] competing facts.'"  *Id.* (quoting *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  A facial attack "challenges subject matter jurisdiction without disputing the facts alleged in the complaint, and [ ] requires the court to 'consider the allegations of the complaint as true.'"  *Id.* (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n.3 (3d Cir. 2006)).  The jurisdictional challenge here is facial.  *See Berger v. Cushman & Wakefield of Pa., Inc.*, No. 13-5195, 2016 WL 8716244, at *2 (E.D. Pa. Mar. 11, 2016) ("[A] ripeness challenge is a facial attack . . . .") (citation omitted).

　　　　To have standing, a plaintiff must allege facts to show "'an injury that is concrete, particularized, and imminent rather than conjectural or hypothetical."  *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Carney v. Adams*, 141 S. Ct. 493, 499 (2020)); *see also Bognet v. Secretary Commw. of Pa.*, 980 F.3d 336, 348 (3d. Cir. 2020) (explaining that a plaintiff "must be injured . . . in a way that concretely impacts [their] own protected legal interests").  Also, "the case must be 'ripe' – not dependent on 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'"  *Trump*, 141 S. Ct. at 535 (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998).  "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general

allegations embrace those specific facts that are necessary to support the claim." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (internal quotation, citation and alteration omitted).

B

Walker, Carpenter, Kletcheck, Warehouse Trainers and Carpenter Core argue Pepperidge Farm has no standing to pursue its claims which they contend are for "hypothetical and speculative" damages.  (ECF 12 at 6; ECF 19 at 7.)  They maintain the company must allege a "certainly impending" threat of injury or "substantial risk of harm" to withstand dismissal.  (ECF 12 at 6; ECF 19 at 7; ECF 30 at 3.)  *See Trump*, 141 S. Ct. at 539.  They argue Pepperidge Farm's unjust enrichment claims and indemnification claims presume "that Pepperidge Farm will prevail" and therefore are conditional and provide no basis for standing.  (ECF 12 at 6; ECF 19 at 7.)  They contend the company's litigation costs are not sufficient to confer standing where the Consignment Agreement has no indemnification provision that gives "rise to Pepperidge Farm's indemnification claim . . . ." (ECF 30 at 4.)  Defendants and Third-Party Plaintiffs also contend Pepperidge Farm will not be prejudiced by the dismissal of its "hypothetical" unjust enrichment claims because it has raised the issue of an "offset" in Paragraph 15 of its "Separate Defenses."  (*Id* at 4-5.)  Finally, they argue Pepperidge Farm's standing argument "frustrate[s] the intent of the FLSA and Pennsylvania Wage laws" and would subject courts to "counterclaims every time a wage and hour lawsuit is filed," "needlessly increas[ing]" litigation costs and delaying resolution of cases.  (*Id.* at 5.)

Pepperidge Farm counters that Plaintiffs' "initial claims strongly indicate that

7

there is in fact a justiciable controversy between the parties as to related counterclaims and cross-claims . . . ." (ECF 31 at 5.) It argues that unlike the claims in *Trump* or *Bognet*, its counterclaims and cross-claims do not rely on "speculative allegations about how Plaintiffs or Third Party Defendants might act in the future . . . or on generalized injuries purportedly suffered by the public at large . . . ." (ECF 31 at 9.) The company argues it has alleged "concrete and particularized economic injuries in the form of attorney's fees (some of which have already been incurred), liability for damages (if Plaintiffs are correct that they were misclassified), and specific economic benefits unjustly conferred on Plaintiffs and Third Party Defendants at Pepperidge Farm's expense" (if Plaintiffs show they were misclassified). (*Id.* at 10.) Pepperidge Farm argues *Trump* and *Bognet* "did not hold that counterclaims and cross-claims seeking monetary relief premised on the plaintiff's own claims for monetary relief are suddenly no longer justiciable under Article III." (*Id.*)

Pepperidge Farm's third-party indemnification and unjust enrichment claims against Carpenter Core and Warehouse Trainers are governed by Federal Rule of Civil Procedure 14(a)(1), which permits a defendant, as a third-party plaintiff, to serve a complaint "on a nonparty who is *or may be* liable to it for all or part of the claim against it." Fed. R. Civ. P. 14(a)(1) (emphasis added). "The very nature of third-party practice subjects it to contingencies; that is, the third-party plaintiff's harm is contingent upon the outcome of the underlying action and, thus, the third-party defendant's potential liability is likewise contingent upon the third-party plaintiff underlying liability." *State Coll. Area Sch. Dist. v. Royal Bank of Canada*, 825 F. Supp. 2d 573, 583 (M.D. Pa. 2011). Recognizing this, courts in this Circuit have allowed defendants to bring third-

party indemnification claims under Rule 14(a) to "promote judicial efficiency" and reduce the need for "bring[ing] a second action against a third individual who may be liable to defendant for all or part of a plaintiff's original claim." *Berger v. Cushman & Wakefield of Pa., Inc.*, No. 13-5195, 2016 WL 8716244, at *3 (E.D. Pa. Mar. 11, 2016); *see Milo, LLC v. Procaccino*, No. 16-5759, 2020 WL 1855117, at *3 (E.D. Pa. Apr. 13, 2020). "Although a claim for indemnity does not arise until the prime obligation to pay has been established, some third-party actions may be commenced in the interest of judicial economy before they are technically ripe." *Hatco Corp. v. W.R. Grace and Co.*, 59 F.3d 400, 406 (3d Cir. 1995).

Pepperidge Farm's similar counterclaims for indemnification against Walker and for unjust enrichment against Walker, Carpenter and Kletcheck, though contingent on this Court's determination, may also proceed. Even if Pepperidge Farm's counterclaims are not compulsory because they are not claims it had "*at the time of its service*"[1] Fed. R. Civ. P. 13(a) (emphasis added), the claims are permitted by Rule 13(b).[2] Fed. R. Civ. P. 13(b) ("A pleading may state as a counterclaim against an opposing party any claim that is not compulsory.")

Unlike in *Trump* or *Bognet*, Pepperidge Farm's claims are not dependent on the future action of an independent third-party not before the Court. Instead, its claims

---

[1]     The counterclaims arise out of work that is the subject of Plaintiffs' FLSA, PWPCL and unjust enrichment claims – the same "transaction or occurrence." *See Transamerica Occidental Life Ins. Co. v. Aviation Office of Am.*, 292 F.3d 384, 390 (3d Cir. 2002) (construing the terms "transaction or occurrence" "generously" to "promote judicial economy").

[2]     Even if the Court were to dismiss Pepperidge Farm's counterclaims as unripe, if the claims later become ripe by virtue of this Court's FLSA classification determination, Pepperidge Farm would be permitted to assert them in a supplemental pleading. *See* Fed. R. Civ. P. 13(e) ("The court may permit a party to file a supplemental pleading asserting a counterclaim that matured or was acquired by the party after serving an earlier pleading.").

hinge on actions the parties have already undertaken and the Court's determination as to whether Walker, Carpenter and Kletcheck were misclassified as independent contractors. The threshold inquiry into standing does not depend on the Court's ultimate finding with respect to their misclassification claims. *See Warth v. Seldin*, 422 U.S. 490, 500 (1975) ("[S]tanding in no way depends on the merits of the plaintiff's contention that particular conduct is illegal . . . ."). At this stage of the litigation, Pepperidge Farm has sufficiently alleged it has standing to pursue its crossclaims and third-party claims.

III

A

Plaintiffs and Third-Party Defendants also contend Pepperidge Farm's counterclaims and third-party claims should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). To satisfy Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The same standard applies to allegations in counterclaims. *See Charlestown Twp. v. United States Sur. Co.*, No. 17-5469, 2020 WL 618552, at *1 (E.D. Pa. Feb. 7, 2020) (citing *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 174 (1965)). A claim is facially plausible when the facts pled "allow[ ] the court to draw the reasonable inference that [a] defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed.

10

R. Civ. P. 8(a)(2)).

When a complaint or counterclaim includes well-pleaded factual allegations, the Court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 679). This "presumption of truth attaches only to those allegations for which there is sufficient factual matter to render them plausible on their face." *Schuchardt v. President of the U.S.*, 839 F.3d 336, 347 (3d Cir. 2016) (internal quotation and citation omitted). This plausibility determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Connelly*, 809 F.3d at 786-87).

B

Pepperidge Farm's unjust enrichment claims against Walker, Carpenter, Kletcheck, Carpenter Core and Warehouse Trainers assert that if Walker, Carpenter and/or Kletcheck should have been classified as its employees, Plaintiffs and Third-Party Defendants were unjustly enriched by retaining the benefits received pursuant to the Consignment Agreements. (ECF 6 at ¶ 30-35; ECF 10 at ¶¶ 29-34 (pled in the alternative); ECF 11 at ¶¶ 29-34 (pled in the alternative). Plaintiffs and Third-Party Defendants argue the claims must be dismissed because Pepperidge Farm has not plausibly alleged they have been unjustly enriched. (ECF 12 at 12; ECF 19 at 14.) They also argue the unjust enrichment claims are claims for setoff and should be dismissed because they are not authorized by the FLSA. (ECF 12 at 7-8; ECF 19 at 8-9.)

At this stage of the proceedings, neither the FLSA nor the PWPCL bar

Pepperidge Farm's unjust enrichment claims and they are sufficient to withstand dismissal.  Pepperidge Farm has alleged that Plaintiffs and Third-Party defendants were independent contractors.  (*See, e.g.*, ECF 6, ¶ 11; ECF 10, ¶ 9; ECF 11, ¶ 9.)  As the nonmovant, the Court takes its allegations as true.

> [T]o benefit from the protections of the FLSA, the Court must first conclude that Plaintiffs and/or Third-Party Defendants were employees rather than independent contractors – a determination which the Court is not yet ready to make.  The Court has not – and cannot today – answer the highly factual inquiry of whether Plaintiffs and/or Third-Party Defendants were misclassified as independent contractors without the benefit of further discovery.

*Mode v. S-L Distribution Co., LLC*, No. 18-150, 2019 WL 1057045, at *9 (W.D.N.C. Mar. 6, 2019); *see also Carnes v. Fannie's Inc.*, No. 19-4171, 2020 WL 6291405, at *3 (N.D. Ga. Mar. 23, 2020) (holding the defendant's unjust enrichment counterclaim was "best considered on summary judgment after the Court makes its determination as to whether [the Plaintiff] is an employee entitled to a minimum wage under the FLSA or is an independent contractor"); *Franze v. Bimbo Foods Bakeries Distrib., LLC*, No. 17-3556, 2019 WL 1244293, at *3 (S.D.N.Y Mar. 15, 2019) ("Until such time that a determination is made on the Plaintiffs' status [as employees or independent contractors], dismissal of the unjust enrichment claim would be improper.").  It is likewise premature to decide whether Plaintiffs are properly classified as employees or independent contractors under the PWCPL.  *See Williams v. Jani-King of Phila. Inc.*, 837 F.3d 314, 321 (3d Cir. 2016) (predicting the Pennsylvania Supreme Court would apply a "multifactor test for distinguishing between employee and independent contractor status" "in the context of the [P]WPCL").  Whether Pepperidge Farm can ultimately recover on a theory of unjust enrichment is a question to be answered later.

12

C

In Paragraph 13 of the Consignment Agreements, Walker, Carpenter Core and Warehouse Trainers agreed to indemnify the company for

> any and all claims relating to payroll, unemployment compensation, [and] employee benefits . . . caused or alleged to have been caused directly or indirectly by or as a result of the actions of Consignee or any of its officers, directors, employees, agents, representatives or helpers or by or as a result of the operation of the Distributorship . . . .

(ECF 1 at 48-49, ¶ 13; *id.* at 26, ¶ 13; *id.* at 36, ¶ 13.)  Pepperidge Farm seeks indemnification pursuant to the Consignment Agreements in its counterclaim against Walker and in its third-party complaints, alleging the Paragraph 13 indemnification provisions "cover" Plaintiffs' claims.  (*See* ECF 6 at ¶ 28; ECF 10 at ¶ 26; ECF 11 at ¶ 26.)  Plaintiffs and Third-Party Defendants argue Paragraph 13's plain language does not trigger a contractual duty to indemnify the company for its alleged "taking unlawful deductions and . . . violation [of] federal and state wage laws."  (ECF 26 at 2.)  They also contend Pepperidge Farm's indemnification claims are not enforceable under the FLSA or the PWPCL.  (ECF 26 at 1.)

The company's indemnification claims against Carpenter Core and Warehouse Trainers are based on the theory that Carpenter and Kletcheck were properly classified as independent contractors.  Pepperidge Farm argues that because the Court must assume the allegations in its third party complaint are true, "there will be no 'FLSA violation' to speak of and Pepperidge Farm will be entitled to indemnification for the attorney's fees and costs that it incurs in defending this lawsuit."  (ECF 25 at 17.)  As for the counterclaim against Walker, Pepperidge Farm argues it seeks "to hold [him] accountable for his contractual promise to adhere to all applicable wage-and-hour laws

13

and indemnify Pepperidge Farm if it faces a claim for violating those laws." (ECF 24 at 18.) The company contends Paragraph 13 unambiguously encompasses its indemnification claims because the provision states that each signatory "must indemnify Pepperidge Farm against 'any and all claims' – not just third-party claims – relating to payroll and employee benefits . . . ." (ECF 24 at 20; ECF 26 at 21.) But Pepperidge Farm fails to address the provision's limitation to claims "caused or alleged to have been caused directly or indirectly by or as a result of the actions of Consignee . . . or by or as a result of the operation of the Distributorship." (ECF 1 at 48-49 (Compl. Ex. C) at ¶ 13)).)

Dismissing similar indemnification claims in *Fernandez v. Kinray*, the court explained: "Plaintiffs allege that defendants acted improperly by misclassifying them as independent contractors. Of course, defendants deny these allegations, and whether defendants in fact acted improperly is the issue to be resolved through this litigation. Either way, it is still *defendants' actions* that are at issue here." No. 13-493, 2014 WL 12778829, at *4 (E.D.N.Y. Feb. 5, 2014) (emphasis added). Pepperidge Farm effectively seeks indemnification for "a meritless lawsuit brought by independent contractors to obtain wages to which they were not entitled. Such a lawsuit could not, by definition, arise from the Plaintiffs' performance of services under the contract." *Yaw Adu Poku v. BeavEx, Inc.*, No. 13-3327, 2013 WL 5937414, at *2 (D.N.J. Nov. 1, 2013). As the court in *Yaw Adu Poku* explained, "[t]he allegedly illegal conduct of Defendant in paying Plaintiffs cannot reasonably be understood to fall within the scope of the alleged indemnification provision, as it arises from Defendant's performance, not Plaintiffs'." No. 13-3327, 2013 WL 5937414, at *1 (D.N.J. Nov. 1, 2013). Because the plain

14

language of Paragraph 13 does not support Pepperidge Farm's indemnification claims, they are dismissed without leave to amend. [3]

      An appropriate Order follows.

BY THE COURT:


 ***/s/ Gerald J. Pappert***
GERALD J. PAPPERT, J.

---

[3]      The result remains the same whether the indemnification provisions are considered under Pennsyvlania or Connecticut law.